**COUNTRY FAIRWAYS, INC.,**
**Debtor-Appellant,**

v.

**Steven MOTTAZ, Trustee-Appellee,**

**Michael Kane, Intervenor-Appellee.**

**No. 76–1132.**

United States Court of Appeals,
Seventh Circuit.

Argued April 22, 1976.
Decided Aug. 9, 1976.

---

Donald E. Deuster, Mundelein, Ill., for debtor-appellant.

Steven N. Mottaz, Alton, Ill., James W. McRoberts, Jr., Fairview Heights, Ill., Donald L. Smith, Alton, Ill., for appellees.

Before CUMMINGS and BAUER, Circuit Judges, and JAMESON, Senior District Judge.*

PER CURIAM:

This is an appeal from an order of the district court dismissing an appeal by Country Fairways, Inc., the debtor, from orders of the bankruptcy court (1) dismissing the debtor's petition to revert to a Chapter XI proceeding and (2) confirming the sale of the assets of the debtor to Michael Kane, intervenor. We affirm.

On May 7, 1975, Country Fairways, Inc., an Illinois corporation which owned and operated a golf course, filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 722 et seq.[1]

---

* Senior Judge William J. Jameson of the District of Montana is sitting by designation.

1. Proceedings had been instituted in state court for the foreclosure of a mortgage covering all of the debtor's assets, and a decree of foreclosure was entered May 7, 1975.

No plan of arrangement was filed with the petition. Pursuant to 11 U.S.C. §§ 734–735, the bankruptcy court on May 20, 1975 issued an order for a first meeting of creditors on June 3, 1975.[2] On June 3, Steven N. Mottaz was appointed receiver and the hearing was adjourned to July 1.

On July 1, 1975, an order was entered adjudicating the debtor a bankrupt, thus converting the proceedings into a straight bankruptcy.[3] On July 10, Mottaz, as trustee, filed a petition to sell the assets of the estate; and on July 14 the bankruptcy judge entered an order for a meeting of creditors and hearing on the petition on July 29.

On July 25 a proposed plan of arrangement was filed. No acceptances of the plan by the creditors were filed with the proposal, nor were any filed at the hearing on July 29. On that date an order was entered approving Mottaz as trustee. On August 13 an order was entered authorizing the trustee to sell all of the debtor's assets, the order reciting that the matter came on for hearing on the complaint of the trustee and an answer filed by the mortgagee, and that a decree of foreclosure had been entered on May 7, 1975 for the sum of $54,316.76 due on the mortgage.[4]

On September 17 the debtor filed a petition to revert to a Chapter XI proceeding. On September 22 the trustee filed a petition to confirm the sale of the assets to Kane.

On the same date the court entered an order for a meeting of creditors and hearing on the two petitions on September 30. The debtor did not appear at the September 30 hearing, but submitted a letter stating that it would not participate in the hearing, expressing lack of confidence in the bankruptcy judge, and stating that an emergency application for a writ of mandamus had been filed in this court.[5]

On October 7, 1975, the bankruptcy court entered two orders—one denying the petition to revert to a Chapter XI proceeding, and the other confirming the sale of debtor's assets to Michael Kane for $100,000. On October 16 the debtor filed a notice of appeal to the district court from the two orders entered October 7 and also the order of sale entered August 13, 1975.

On October 28 the debtor was ordered by the district court to file a supersedeas bond in the amount of $110,000 on or before November 7, 1975.[6] On November 7 the debtor filed in the district court three motions—(1) to extend the time of filing the bond; (2) for leave to file an amended plan of arrangement; and (3) to revert to a Chapter XI proceeding.

On November 10 the trustee agreed by letter to debtor's counsel to refrain from completing the sale until November 12, and if he received the sum of $80,000 by that date he would call a meeting of creditors. If he did not receive the money he would

---

**2.** The notice provided, *inter alia*, that the officers of the debtor should appear for the purpose of being examined; that a hearing on confirmation of the plan would be held at a date to be fixed later; and that at the meeting on June 3 or any adjournment thereof a hearing would be held "to determine whether an order should be entered dismissing the case or adjudicating the debtor a bankrupt."

**3.** Appellant failed to file a transcript of the proceedings at the various hearings and meetings of creditors, so that the record before this court contains only the formal orders. It has been necessary accordingly to rely upon statements contained in appellee's brief, which are not questioned by appellant, with respect to what transpired at the hearings. It appears from appellee's brief that the hearing on July 3 included a complaint by the mortgagee seeking relief from an automatic stay order.

**4.** While not included in the record on appeal, it appears from appellee's brief that on August 28 the debtor filed notice of appeal from the August 13 order and on August 29 the bankruptcy judge by letter refused to take the appeal because it was not perfected within 10 days as required by Rule 802 of Bankruptcy Procedure. On September 9 the debtor filed a request for leave to file a notice of appeal out of time, which was set for hearing on September 16 and continued to September 30.

**5.** It appears from appellee's brief that this application was filed on September 25 and denied on October 2.

**6.** Also on October 28 the appeal from the order of sale entered August 13, 1975 was dismissed, pursuant to stipulation of counsel.

proceed to transfer the property. Checks totaling $70,000 [7] were delivered to the trustee on November 12, and he called a meeting of the debtor, its creditors, and the purchaser for November 18. Kane demanded completion of the sale. Negotiations continued between the trustee, debtor, and Clay East, who was to provide interim financing.

On November 24, the record on appeal was filed in the district court, pursuant to Rule 807. The following day the bankruptcy judge received a letter from the attorney for East regarding requirements for proposed financing, and stating in part: "The corporation must file a plan embodying the above with the Bankruptcy Court; it must be approved; the interest, if any, of the successful bidder in the real estate and improvements must be terminated and the bankruptcy proceeding concluded".

On December 30, 1975, the trustee filed a motion to dismiss the appeal for failure to timely file the transcript of evidence or its brief or otherwise diligently pursue the appeal.[8] On January 19, 1976, the district court entered an order dismissing the appeal and authorizing the trustee to complete the sale. The order recites, *inter alia*, (1) that on October 28, 1975, the debtor was ordered to file an appeal bond in the amount of $110,000 and that the bond was not filed and the orders of October 7, 1975, had not been stayed pending the appeal; (2) that a transcript of the evidence included in the debtor's designation of contents of record was to be furnished by the debtor and it had not done so; and (3) that by general order entered August 28, 1975, appellants were given 30 days from the time

of filing an appeal to submit a brief, that the debtor's time to file a brief expired December 24, 1975, and the debtor had failed to file a brief or request extension of time to file its brief.[9]

On this appeal, the debtor does not question the findings of the district court. Rather it is argued that it would be a "gross injustice" to deprive the debtor of the "procedural opportunities specifically set forth in Chapter XI", and that the bankruptcy judge and trustee "misled the Debtor into reasonably concluding that no appeal was necessary".

It is undisputed that there was a sale of the debtor's assets to a good faith purchaser and that this sale was confirmed by the bankruptcy court on October 7, 1975. While an appeal was taken from the order confirming the sale, appellant failed to request a stay order or file the supersedeas bond required as a condition for a stay. In addition appellant failed to file a transcript of the proceedings in the bankruptcy court or to file a brief in support of its position within the time required by a general order of the district court. As a result on December 30, 1975, the trustee filed the motion to dismiss the appeal. Appellant failed to file any response to that motion setting forth the defenses now claimed. At a hearing on January 19, 1976, the trustee called the attention of the district court to all of these facts and informed the court that the purchaser was insisting upon a completion of the confirmed sale.[10] Recognizing the rights of the purchaser-intervenor, and the failure of appellant to comply with the court's order, the court ordered the appeal dismissed.

7. One of the checks was a cashier's check for $65,000 payable to Clay East endorsed "Will endorse upon completion of proper loan papers".

8. No response was filed to the motion, but the debtor was represented by counsel at the hearing on the motion on January 19, continued from January 12 at the request of debtor's counsel.

9. It appears from a supplemental record on appeal that an order was entered by the district

court on February 6, 1976, enjoining the debtor from interfering with the transfer of the property to Michael Kane. Notice of appeal from that order was filed on February 13. The property was transferred to Kane on February 16, 1976.

10. The trustee informed the court that the purchaser had paid $10,000 and the remaining $90,000 would be paid upon completion of the sale.

Rule 805 of the Rules of Bankruptcy and Rule 62(d) of the Federal Rules of Civil Procedure, from which the Bankruptcy Rule is derived, permit a district court to stay enforcement of a bankruptcy court order pending appeal. Under those rules the district court may, however, condition of the granting of the stay upon the filing of a supersedeas bond. In that event, the filing of the petition for review does not effect a stay unless the bond is filed.

The question here presented was considered recently by the Fourth Circuit (*In Matter of Abingdon Realty Corp.*, 530 F.2d 588 (1976)), where no stay was sought of a bankruptcy court order approving sale of the assets of the bankrupt to a good faith purchaser. In holding that the appeal from the bankruptcy court order was moot and affirming an order of dismissal, the court said at 530 F.2d 589-590:

> "It is settled law that the filing of a petition to review an order of a bankruptcy judge (formerly a referee in bankruptcy), does not stay the effect or operation of the order unless a supersedeas bond is filed or the order itself provides for a stay. [Citing cases and 2A Collier on Bankruptcy, 14th ed., 1974, ¶ 39.26, p. 1526]. A proposed amendment to Bankruptcy Rule 805, which has been approved by the Judicial Conference of the United States, would add the following sentence at the end of that rule: 'Unless an order approving a sale of property or issuance of a certificate of indebtedness is stayed pending appeal, the sale to a good faith purchaser or the issuance of a certificate to a good faith holder shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser or holder knows of the pendency of the appeal.' The Advisory Committee's Note states that the sentence proposed to be added 'is declaratory of existing case law.' We agree. [Citing cases, including *Fink v. Continental Foundry & Machine Co.*, 240 F.2d 369 (7 Cir. 1957), *cert. denied*, 354 U.S. 938, 77 S.Ct. 1401, 1

L.Ed.2d 1538, and 11 Wright & Miller, Federal Practice and Procedure: Civil § 2904, n. 31.]"

Here too there was a confirmed sale to a good faith purchaser. The appeal from the bankruptcy court order became moot in the absence of a stay order or the filing of the required supersedeas bond.

In support of the contention that it was misled by the bankruptcy judge and trustee, appellant relies largely upon the negotiations between the trustee and debtor subsequent to the order confirming the sale. As noted *supra*, the debtor refused to participate in the hearing held on September 30, 1975, which resulted in the order of October 7 confirming the sale and denying debtor's petition to revert to a Chapter XI proceeding.[11]

It is true that even after the entry of the order confirming the sale and pending perfection of the appeal from that order, the bankruptcy judge and trustee manifested a willingness to give appellant a further opportunity to present an arrangement plan acceptable to its creditors which would result in payment in full of its indebtedness. We find nothing in the record, however, to justify the contention that the bankruptcy judge and trustee "misled the debtor into reasonably concluding that no appeal was necessary". There might be some basis for this contention if the sole action had been the denial of the petition to revert to a Chapter XI proceeding; but the order confirming the sale vested rights in a bona fide purchaser which could not be ignored by the trustee, the district court, or this court. When appellant failed to file the bond and brief, the trustee properly sought dismissal of the appeal. In turn the district court properly dismissed the appeal pursuant to Bankruptcy Rule 801.

Nor do we find merit in appellant's contention, first raised on this appeal, that the proceedings were fatally defective because the bankruptcy court failed to fix a time for filing the proposed plan of arrangement pursuant to 11 U.S.C. § 735.

11. In the absence of a transcript, there is no record before this court of what transpired at that hearing except the letter from debtor declining to participate.

In the first place, it is clear, as this court has held in numerous cases, see *e. g., Desert Palace Inc. v. Salisbury*, 401 F.2d 320, 324 (7 Cir. 1968) and *Federal Savings and Loan Insurance Corp. v. Quinn*, 419 F.2d 1014, 1019 (7 Cir. 1969), that an issue not presented in the court below cannot be raised for the first time on appeal and form a basis for reversal.

In the second place, appellant may not under the peculiar facts of this case now rely upon the alleged failure to comply with the provisions of § 735. It is true that this section provides that at the meeting of creditors, the court shall fix a time within which the proposed arrangement shall be filed. Here, however, the meeting of the creditors was adjourned from June 3 to July 1, when the appellant was adjudicated a bankrupt. As noted *supra*, the notice to creditors expressly provided that the court would determine at the meeting whether an order should be entered dismissing the case or adjudicating the debtor a bankrupt. In the absence of a transcript, there is of course no record of what transpired at the June 3 and July 1 meetings of creditors or the other hearings. Moreover, a proposed plan was in fact filed prior to the entry of the order of sale; but appellant refused to participate in the combined hearing on its petition to revert to a Chapter XI proceeding and the trustee's petition to sell the assets of the estate, at which the plan would have been considered. Any failure of the bankruptcy court to follow strictly the applicable statutes and bankruptcy rules would appear attributable to the confusion and delay caused by the bankrupt.

Affirmed.