GODBOLD, Circuit Judge:
These consolidated appeals are before us on two separate but related district court decisions: (1) affirmance of the bankruptcy court’s confirmation of a proposed reorganization plan (No. 86-5286); and (2) dismissal of a separate action against the Bank of New York (No. 86-5386). We dismiss these appeals as moot.
BACKGROUND
Appellants are the five debtors in the underlying Chapter 11 proceeding: Theodore Gould; Holywell Corporation (Gould is sole stockholder and president); Miami Center Corporation (wholly-owned subsidiary of Holywell with Gould as president); Chopin Associates (general partnership between Gould and Miami Center Corporation); and Miami Center Limited Partnership (Gould and Miami Center Corporation are general partners and owners of some limited partnership shares). These debtors developed the Miami Center Project, which consisted of an office building, a hotel, retail space and a garage in downtown Miami. The Bank of New York financed the construction of the Project.
Debtors filed voluntary petitions for bankruptcy when the Bank instituted foreclosure proceedings against the Project. The filing of the petitions automatically stayed all actions against debtors, including the Bank’s foreclosure action. Over 400 creditors have or had an interest in the bankruptcy proceeding.
Both debtors and the Bank filed competing reorganization plans in the bankruptcy proceeding.[1] The creditor committees and individual creditors overwhelmingly approved the Bank’s plan and rejected debtors' plan. The bankruptcy court subsequently confirmed the Bank’s plan, over *378 debtors’ and debtor-affiliated entities’ objections.[2]
Debtors sought to stay the implementation of the reorganization plan pending an appeal to the district court. The bankruptcy court conditioned such a stay on the posting of a $140 million bond, later reduced by the district court to $50 million. We dismissed an interlocutory appeal of this bond requirement for lack of jurisdiction. Debtors failed to post the bond within the required time limit, and the trustee began implementing the reorganization plan, including the sale of the Miami Center Project to the Bank’s designee for $255.6 million.
Debtors appealed the bankruptcy court’s confirmation of the reorganization plan. District Judge Aronovitz of S.D. Florida denied the Bank’s motion to dismiss the appeal and remanded the case to the bankruptcy court for entry of explicit findings of fact and conclusions of law upon which the district court could properly base its appellate review. On remand the bankruptcy court held an evidentiary hearing and solicited proposed findings of fact and conclusions of law from each party. The bankruptcy court adopted the Bank’s proposed findings and again confirmed the Bank’s proposed reorganization plan. On appeal Judge Aronovitz affirmed the bankruptcy court’s confirmation order. 59 B.R, 340.
Debtors also filed a separate action in district court against the Bank, alleging fraud, RICO violations, and other claims in connection with construction loans made by the Bank for the Miami Center Project. District Judge Hoeveler of S.D. Florida dismissed this related action primarily because the reorganization plan, which was confirmed by Judge Aronovitz, instructed the trustee to dismiss the action. Debtors now appeal both Judge Aronovitz’s confirmation of the reorganization plan (No. 86-5286) and Judge Hoeveler’s dismissal of debtors’ related action against the Bank (No. 86-5386).[3]
DISCUSSION
The Bank’s motion to dismiss these appeals was carried with the case. The Bank contends that the appeals are moot because the reorganization plan has been substantially consummated. It relies primarily on our decisions in In re Matos, 790 F.2d 864 (11th Cir.1986) and In re Sewanee Land, Coal & Cattle, Inc., 735 F.2d 1294 (11th Cir.1984). We explained in In re *379 Matos that “when the debtor fails to obtain a stay pending appeal of the bankruptcy court’s or the district court’s order setting aside an automatic stay and allowing a creditor to foreclose on property, the subsequent foreclosure and sale of the property renders moot any appeal.” 790 F.2d at 865; see also In re Sewanee Land, 735 F.2d at 1295-96.
The rationale in these cases for dismissing an appeal as moot for failure to obtain a stay pending appeal is that a court cannot order relief without compromising the integrity of the sale of the property to a good faith purchaser. In re Matos, 790 F.2d at 866; Markstein v. Massey Assocs., 763 F.2d 1325, 1327 (11th Cir.1985). In this case debtors did not post the bond for the stay, and the project has since been sold to a good faith purchaser. This does not conclude our inquiry, however, because the reorganization plan governed more than just the sale of the project, and an appeal is not moot if the court can still order some effective relief. See In re Matos, 790 F.2d at 865 n. 3 (although court could not reverse title if the debtor failed to obtain a stay pending appeal, the appeal was not moot where the debtor could obtain an award of damages from the trustee); see also In re AOV Indus., 792 F.2d 1140, 1146 (D.C.Cir.1986) (“[Fjailure to obtain a stay is not per se dispositive of all the issues before [the appellate court].”).
The proper standard to apply in this case is whether the reorganization plan has been so substantially consummated that effective relief is no longer available. See In re AOV Indus., 792 F.2d at 1147-48 (“Determinations of mootness ... require a case-by-case judgment regarding the feasibility or futility of effective relief should a litigant prevail.”); In re Sun Country Dev., Inc., 764 F.2d 406, 407 n. 1 (5th Cir.1985) (“To dismiss [an] appeal on the basis of mootness, we must find that the plan has been so substantially consummated that effective judicial relief is no longer available to [the complaining party].”) In re Information Dialogues, Inc., 662 F.2d 475, 476 (8th Cir.1981) (per curiam) (appeal moot when it is “impossible for a court to grant effective relief”); In re Roberts Farms, 652 F.2d 793, 797 (9th Cir.1981) (appeal moot when reorganization plan “has been so far implemented that it is impossible to fashion effective relief for all concerned”).
Debtors asked Judge Aronovitz to reverse both the bankruptcy court’s substantive consolidation of their estates and the court’s confirmation of the proposed reorganization plan. They concede on appeal that circumstances have changed since the confirmation order was entered and that complete reversal of the bankruptcy court’s orders may no longer be possible. They instead ask for partial reversal and more limited relief. First, they ask us to reverse the bankruptcy court and essentially restructure the reorganization plan so that debtor-affiliated creditors have priority to all remaining funds in the estate. Second, they ask us to reinstate their related lawsuit against the Bank.[4]
*380 The reorganization plan has been substantially consummated.[5] The trustee has conveyed the project, worth over $250 million, to a good faith purchaser pursuant to the reorganization plan. With the exception of debtor-affiliated creditors, the trustee has paid the undisputed claims of all creditors and reserved funds to pay the disputed claims of the remaining creditors. Effective relief is therefore impossible. See In re Information Dialogues, Inc., 662 F.2d at 476 (effective relief impossible where all undisputed creditor claims have been paid and funds reserved for all disputed creditor claims).
Debtors’ reliance on In re AOV Indus., 792 F.2d 1140 (D.C.Cir.1986) is misplaced. In that case substantial funds remained available to compensate the remaining creditors. At the time of the hearing, “only $643,000 of the $3 million made available by the [purchaser’s] letter of credit had been drawn down, and none of [the debtor’s] $800,000 contribution had been distributed.” Id. at 1149. Moreover, the court explained that on a motion to dismiss an appeal as moot, a court must consider the proposed relief’s “potential impact on the reorganization scheme as a whole,” including whether the relief will “implicate or have an adverse effect on the interests of other, non-party creditors.” Id. at 1148-49.
Unlike the situation in In re AOV Indus., the impact of the proposed relief on the reorganization plan and innocent creditors would be significant. Debtors can obtain their requested monetary relief only at the expense of the few remaining unaffiliated creditors whose claims are still in dispute and of the Bank, which has complied with all of its obligations under the reorganization plan. This relief therefore would not be effective judicial relief.
Reinstating the related lawsuit against the Bank and permitting the trustee or debtors to pursue the action would be similarly ineffective relief. Dismissal of the suit against the Bank was an integral part of the reorganization plan, pursuant to which the Bank released $30 million of its cash collateral and extended a further financing commitment of $15 million. Because the Bank has complied with its obligations under the reorganization plan, and because the trustee has paid or reserved funds to pay all creditors other than debt- or-affiliated creditors, this court cannot provide effective relief.
Following the submission of these appeals for decision the appellants have moved to supplement the record by filing orders and opinions entered by the Southern District of Florida and the bankruptcy court of the Southern District of Florida, allegedly concerning the matters submitted to this court for decision. The motion is DENIED. This court has, however, treated the motion as though it had been filed under FRAP Rule 28(j) and has considered the opinions and orders attached to the motion as supplemental citations. Having considered these supplemental citations, the court remains of the view that these appeals must be and are DISMISSED.

. Although the five debtors submitted individual plans, the plans were virtually identical.

. The central features of the reorganization plan were:
(1) substantive consolidation of the estates of the five debtors;
(2) creation of the Miami Center Liquidating Trust, consisting of all assets of debtors, for the payment of creditor claims by a court-appointed liquidating trustee;
(3) purchase by the Bank or its designee of the project (including furniture, fixtures and equipment) for the appraised value of $255.6 million, which was to be funded by net amount owed to the Bank by debtors (approximately $240 million) plus new cash by the purchaser;
(4) release by the Bank of its cash collateral (approximately $30 million), which would be added to the new trust;
(5) further financing commitment of approximately $15 million by the Bank for payment of the claim of Miami Center Joint Venture (which is a general partnership between Gould and Olympia & York Corporation) for the furniture, fixture and equipment leased by the joint venture to the project (a) if and when such claim is allowed over the Bank's pending objections now on appeal in a separate action; (b) to the extent that other assets of the trust prove insufficient to pay the claim; and (c) only if it is ultimately determined that the joint venture has been damaged by its allegedly improper classification under the reorganization plan;
(6) classification of the claimants so that unaffiliated creditors of Holywell are paid first, unaffiliated creditors of other debtors paid next, and inter-debtor and related party claims paid last; and
(7) dismissal by the trustee of the pending related lawsuit by debtors against the Bank.

. Debtors object to the reorganization plan on several grounds: substantive consolidation of the debtors' estates was clearly erroneous; subordination of the claims of debtor-affiliated entities was clearly erroneous; and modification and amendment of the reorganization plan was improper where the Bank failed to issue a disclosure statement regarding the proposed changes and the bankruptcy court failed to require a hearing on the proposed changes. Debtors also contend that the district court erred in dismissing their related action against the Bank. The Bank makes two motions, which were carried with the case: a motion to dismiss the appeals as moot and a motion to strike debtors’ reply brief.

. Debtors request the following specific relief:
(1) reverse in part the substantive consolidation order and unconsolidate the estates that are solvent (Holywell and Gould), close their cases, and let them emerge from bankruptcy with their remaining assets;
(2) reverse in part the confirmation order and restore to their proper status "super priority” loans made by Gould and Holywell to the Miami Center Project so that they have priority over all other creditor claims;
(3) reverse in part the confirmation order and modify the reorganization plan so that leasing claims by debtor-affiliated creditors are restored to the priorities to which they are entitled under the Bankruptcy Code;
(4) reverse in part the confirmation order and vacate the trustee's certificate that entitles the Bank to recover any funds it advances to the joint venture for furniture, fixtures and equipment or modify the reorganization plan so that the Bank’s claim for reimbursement is junior to debtor-affiliated claims;
(5) distribute the remaining funds in accordance with the revised classification of the remaining creditor claims; and
(6) reverse Judge Hoeveler’s dismissal of debtors’ related action against the Bank and reverse in part the confirmation order, thus requiring the trustee to pursue debtors’ related action or permitting debtors to pursue the action on their own.

. 11 U.S.C. § 1101(2) defines “substantial consummation" for purposes of bankruptcy as follows:
(A) transfer of all or substantially all of the property proposed by the plan to be transferred;
(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
(C) commencement of distribution under the plan.