In re The **CHARTER COMPANY,**
et al., **Debtors.**

**SYNTEX CORPORATION,** et
al., **Appellants,**

v.

The **CHARTER COMPANY,** et
al., **Appellee.**

**Bankruptcy Nos. 84–289–BK–J–GP
through 84–332–BK–J–GP
inclusive and 85–1033–BK–J–GP.**

**Nos. 87–216–Civ–J–14, 87–218–Civ–J–14
and 87–219–Civ–J–14.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Nov. 24, 1987.

Benjamin C. Ackerly and Deborah L. Fletcher, Richmond, Va., for Syntex.

Stephen D. Busey, James J. Taylor, Jr., Jacksonville, Fla., Myron Trepper, New York City, for The Charter Co., Charter Oil Co., and Charter International Oil Co.

William L. Webster, Jefferson City, Mo., for State of Missouri.

Stephen R. Baer, Keith A. Ornsdorf, Stuart Hunt, for U.S.

## ORDER

SUSAN H. BLACK, District Judge.

These consolidated cases came on to be heard on The Charter Company, Charter Oil Company and Charter International Company's [hereinafter the "debtor" or "Charter"] Motion to Dismiss Appeal, filed on March 31, 1987, and Charter's Supplemental Motion to Dismiss Appeal, filed on April 14, 1987. The United States, the State of Missouri, and 1,105 dioxin claimants join in Charter's motion. Syntex Corporation, Syntex (U.S.A.) Inc., Syntex Laboratories, Inc., and Syntex Agribusiness, Inc. [hereinafter "Syntex"] filed a response on April 13, 1987. The Court heard oral argument on October 21, 1987.

### 1. *Background*

The parties do not dispute the facts relevant to this motion. On December 18, 1986, the bankruptcy court confirmed Charter's Plan of Reorganization ("The Plan"). On January 16, 1987, the Honorable George L. Proctor, United States Bankruptcy Judge, entered an Order authorizing the debtors to compromise the dioxin-related claims of the State of Missouri (Case No. 87–218–Civ–J–14) for $1 million dollars, the United States (Case No. 87–219–Civ–J–14) for $5 million, and the claims of 1,105 dioxin claimants (Case No. 87–216 Civ–J–14) for a total of $5.275 million pursuant to a settlement agreement entered into by the debtors and the respective claimants. The debtors then consummated the Plan of Reorganization on March 31, 1987, by completing transactions authorized in the Plan.

Syntex did not move for a stay of the Order Approving Compromise in Case No. 87–218–Civ–J–14 or Case No. 87–219–Civ–

J–12 in the bankruptcy court as permitted by Bankruptcy Rule 8005. Similarly, Syntex did not appeal the December 18, 1986, orders confirming the Plan. Syntex did seek a stay of the Order Approving Compromise in Case No. 87–216–Civ–J–14 in the bankruptcy court. The stay was denied on March 20, 1987. This Court denied the stay on appeal on March 26, 1987. The Court of Appeals also denied the stay on appeal on April 17, 1987. On January 23, 1987, Syntex commenced an appeal of the Order Approving Compromise in all three cases by filing a notice of appeal. Subsequently, the debtors filed the instant motion to dismiss.

## 2. *Mootness*

The primary issue presented in this motion is whether or not Syntex's appeal from the Order Approving Compromise is moot due to Syntex's failure to obtain a stay of that order as well as the subsequent transfer of the settlement funds from Charter to the dioxin claimants. Charter argues that if the debtor's property is transferred in reliance on an order from a bankruptcy court during the pendency of an appeal of the order, then the appellate court is powerless to reverse the transfer. Charter argues that this rule is especially appropriate where reversal of the order would vitiate a confirmed and consummated plan of reorganization.

Syntex objects to the application of these rules for four reasons: First, Syntex states that in this case the Court is not powerless to provide the remedy requested under 28 U.S.C. § 157(b)(2)(E). Second, Syntex argues that dismissal of this appeal would contravene *Northern Pipeline Construction v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Third, Syntex states that it should not have had to obtain a stay of the transfer of property pending appeal under 11 U.S.C. § 363(m). Finally, Syntex argues, at least in Case No. 87–218–Civ–J–14, that Charter and the State of Missouri waived the requirement that Syntex should obtain a stay under section 363(m) in the Settlement Agreement and effectively imposed a consensual stay on themselves. The Court will consider each of these arguments in turn.

### a. *Availability of a Remedy*

The Eleventh Circuit Court of Appeals has stated that an appellate court cannot reverse a bankruptcy court order where property of the estate has been transferred or where such a reversal would endanger the viability of the plan. *See In re Sewanee Land, Coal & Cattle, Inc.*, 735 F.2d 1294 (11th Cir.1984), *Miami Center Ltd. Partnership v. Bank of New York*, 820 F.2d 376 (11th Cir.1987). Notwithstanding this precedent, Syntex argues that 28 U.S.C. § 157(b)(2)(E) empowers this Court to reverse the bankruptcy court's order approving compromise. That provision states that the term "core proceedings" includes "orders to turn over property of the estate." Because the settlement funds were at one time property of the estate, Syntex suggests that this Court has power to order the settling parties to return the funds. Syntex cites no authority for this interpretation of section 157(b)(2)(E).

The Court finds section 157(b)(2)(E) to be inapplicable to the instant case. The statute must be interpreted primarily as a grant of jurisdiction to the bankruptcy court to supervise recovery of property of the estate under 11 U.S.C. § 542. Cash transferred by the debtor in connection with a court approved settlement is not property of the estate and should not be recoverable under section 157(b)(2)(E). Furthermore, it is irrelevant to this case that "orders to turn over property of the estate" constitute core proceedings of the bankruptcy court. That definition has no bearing on whether or not the district court on appeal has the power to order creditors to return cash transferred by the debtor pursuant to a court approved settlement.

Congress created the "core"/"non-core" distinction in the wake of the Supreme Court's invalidation of 28 U.S.C. § 1471(b), under Article III of the Constitution, in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Congress's purpose in creating the distinction

was to establish that a related "non-core" bankruptcy proceeding was one in which, under 28 U.S.C. § 157(c)(1), a bankruptcy judge would only submit proposed findings of fact and conclusions of law, not final judgments. *See In re Kreiss,* 58 B.R. 999, 1004 (E.D.N.Y.1986). There is no question that the bankruptcy court acted within its jurisdiction in issuing a final order confirming the settlement. To use section 157(b)(2)(E) to reverse a settlement approved by the bankruptcy court and to disturb the viability of the plan of reorganization would not serve the purpose of the statute and would contravene the clear precedents of the Eleventh Circuit on the question of mootness. *See In re Sewanee Land, Coal & Cattle, Inc.,* 735 F.2d 1294, 1295 (11th Cir.1984); *Miami Center Ltd. Partnership v. Bank of New York,* 820 F.2d 376 (11th Cir.1987).

### b. *Right to Appeal Under Northern Pipeline*

■ In Case No. 87–216–Civ–J–14, Syntex argues that dismissal of this appeal as moot would deny Syntex's right to have its case decided by an Article III court under *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 87, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982). The Court finds that dismissal of this appeal does not contravene Syntex's right to a determination by an Article III judge. *Northern Pipeline* gave parties in bankruptcy proceedings the right to an adjudication by an article III judge in "non-core" proceedings. Syntex admits that these proceedings were "core" proceedings. Accordingly, Syntex's rights under *Northern Pipeline* are not violated by dismissal of this appeal.

### c. *Failure to Secure a Stay*

Syntex argues that the requirement of a stay pending appeal in 11 U.S.C. § 363(m)[1] should be limited to sales or leases of property. Because the transaction in this case is not a "sale or lease," Syntex argues that it should not be penalized for failing to secure a stay. Syntex states that the policy behind protecting one who purchases property from the debtor in good faith and for value requires a stay be obtained in order to process an appeal. Requiring such a stay allowes sales of property to be determined with certainty. *See In re Matos* 790 F.2d 864, 864–66 (11th Cir.1986); 13 *Collier on Bankruptcy* § 805.12 (14th ed. 1977) (construing Former Rule 805); 14 *Collier on Bankruptcy* § 11–62–5 (14th ed. 1977) (construing Former Rule 11–62). Syntex claims that such a policy consideration is not present here where only cash has changed hands from Charter to the settling claimants.

■ The Court finds that Syntex's observation that the stay requirement of section 363(m) applies only to "sales and leases" is correct. The Court does not, however, accept the proposition that securing a stay is not required in cases where, as here, the debtor has transferred cash in settlement of tort claims. Policy considerations other than protection of good faith purchasers necessitate a stay pending the appeal of any order regarding dispositions of property. *See, e.g., Thibaut v. Ourso,* 705 F.2d 118 (5th Cir.1983). In particular, allowing the reversal of orders confirming settlements would contravene the policy goal of encouraging settlements of bankruptcy claims. Claimants and debtors would hesitate to settle claims if they foresaw the potential that such settlements might be reversed on appeal. In this case, the settlement was important not only to the settling claimants but to the other creditors as well. The Plan of Reorganization was consummated in reliance on the settlement of the various dioxin claims. The Court cannot approve a policy that would unreasonably delay the orderly continuation of Chapter 11 proceedings.

---

1. That statute provides as follows:
   The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.
   11 U.S.C. § 363(m).

#### d. *Consensual Stay*

 Syntex's final argument against the requirement that it have obtained a stay prior to its appeal applies only to Case No. 87–218–Civ–J–14. It argues that the Settlement Agreement between the debtor and the dioxin claimants provided for a "consensual stay" thus waiving any rights they had under section 363(m). The language in the Settlement Agreement providing for the putative "consensual stay" is found in paragraph 6 and provides as follows:

> Within 30 days of entry of a Bankruptcy Court order authorizing the Debtors to enter into this Settlement Agreement (the "Approval Order"), or in the event of an appeal from the Approval Order, within 30 days of entry of an order affirming the Approval Order from which no further appeal will lie, the Debtors shall pay to the State of Missouri, Missouri Hazardous Waste Remedial fund, the sum of one million dollars ($1,000,-000) (the "Settlement Amount").

Similar language as found in an Asset Purchase Agreement to sell substantially all of the debtor's assets to a third party in *In re Brookfield Clothes, Inc.*, 31 B.R. 978 (S.D. N.Y.1983).

This Court finds that the language in paragraph 6 and *In re Brookfield Clothes, Inc., supra,* are not material to the instant case. In *In re Brookfield Clothes Inc.,* the appellant was found to have "reasonably relied" on the language in the agreement and did not seek a stay for that reason. *See* 31 B.R. at 982. Syntex makes no such allegation in this case and cannot claim that it failed to seek a stay for that reason.

The Court finds that reversal of the order approving compromise cannot be accomplished due to the transfer of the settlement funds and the effect such a reversal would have on the plan. *See In re Sewanee Land, Coal & Cattle, Inc.,* 735 F.2d 1294 (11th Cir.1984); *Miami Center Ltd. Partnership v. Bank of New York,* 820 F.2d 376 (11th Cir.1987). The Court will, therefore, grant the motion to dismiss the appeal.

Accordingly, it is

ORDERED:

1. That Charter's Motion to Dismiss Appeal, filed on April 14, 1987, is granted.

2. That Syntex's appeal of the bankruptcy court's January 16, 1987, Order Approving Compromise, filed on January 23, 1987, is dismissed.